## SKAGGS v. CURREY et al.

### No. 11234.

Court of Civil Appeals of Texas. Galveston.

May 15, 1941.

Rehearing Denied June 5, 1941.

Lawrence Sochat and E. R. Campbell, both of Houston, for appellant.

Albert Stein, of Houston, for appellees.

GRAVES, Justice.

While both parties make acceptable general statements, this one of the appellee is quoted as more directly serving the purposes of this opinion:

"The appellant, who was plaintiff below, sued defendant E. W. Currey for a boarding bill, and for feeding and stabling two horses owned by Currey, and for establishment of a statutory lien upon said horses, and for foreclosure of same; and sued defendants, Jesse Wilkenfeld and P. R. Friedberg, doing business as Syndicated Finance Company, alleging the latter defendants were asserting a lien against the same horses, which lien they prayed should be held inferior to plaintiff's statutory lien.

"Defendants, Jesse Wilkenfeld and P. R. Friedberg, filed answer, consisting of a general demurrer and denial, and special answer alleging the execution, delivery, and forthwith filing and recording of a chattel mortgage on the Currey horses; and filed a cross-action against their co-defendant, E. W. Currey, and plaintiff, John Skaggs, alleging their chattel mortgage lien on said horses, and asking for its foreclosure, and that their lien be established as superior to that declared by plaintiff, John Skaggs. They further alleged that on December 5, 1939, the date on which they filed for record said chattel mortgage in the county where the horses were, defendant Currey was indebted to plaintiff, John Skaggs, for caring and feeding said horses in the sum of no more than $10.33, and that, if plaintiff had a lien superior to their chattel mortgage lien, same should be held to secure only the sum of $10.33.

"The trial court held that plaintiff's (appellant's) lien for $58.17, should be satisfied first, that being the boarding and feeding charges up to December 5, 1939, the date on which defendants, Jesse Wilkenfeld and P. R. Friedberg, recorded their chattel mortgage from Currey on said horses; and decreed that appellees' chattel mortgage lien for $189.75 be next satisfied, and decreed its foreclosure; further decreed that after both such liens were satisfied, if there remained any of the proceeds of the sale of said horses, that such remainder was subject to plaintiff's claim in the further sum of $148.52, which claim was for boarding and feeding said horses for a period after such chattel mortgage was recorded. The costs were adjudged equally between plaintiff and defendants, Jesse Wilkenfeld and P. R. Friedberg."

In inveighing here against the judgment so adverse to him below, the appellant does so upon a single proposition of law to the effect that the judgment having awarded him his full claim of $206.69 for the feeding of the horses, together with a prior livery-stable keeper's lien under R.S. Article 5502 for only $58.17 of that claim, the court "erred in granting the defendants and cross-plaintiffs, Wilkenfeld and Friedberg, a second lien for the amount of their chattel mortgage debt, and appellant a third lien for the balance of his claim, for the reason that it was merely the province of the court to judicially establish the priority as between the livery-stable keeper's lien and the chattel mortgage lien, and the court below having found that the livery-stable keeper's lien was prior to the chattel mortgage lien, that it should be so rendered for

the full amount of appellant's claim, and not merely for a part thereof."

In support of this presentment, the sole authority cited is the holding of this Court in *American Surety Co. v. Bay City Cattle Co.*, 268 S.W. 247, writ of error refused, which is so presented as being "almost on all fours with the case at bar", and conclusive of this controversy.

After carefully reviewing the record and the authorities so cited, this court is unable to see eye-to-eye with appellant in his ably presented view, concluding rather that, under the undisputed evidence, the trial court was correct in the judgment rendered, as is made manifest by the appellee's counter-proposition and the authorities quoted thereunder towit: "A chattel mortgage lien duly recorded is superior to the lien of the proprietor of a livery or public stable on animals placed with such proprietor for feed, care and attention, beginning from the date of the registration of such chattel mortgage, in the absence of any agreement by the mortgagee that the stable keeper's lien shall have preference." "Article 5502, R.C.S.1925; Article 5506, R.S.1925; Masterson v. Pelz et al. [Tex.Civ.App.], 86 S. W. 56; American Surety Co. v. Bay City Cattle Co.[Tex.Civ.App.], 268 S.W. 247 (writ refused); Oak Cliff State Bank v. Travis [Tex.Civ.App.], 219 S.W. 286."

Both sides rely upon the very material, if not controlling, effect of this recital in the agreed statement of facts, upon which the trial was had before the court without a jury: "On December 1, 1939, the date of the note, one of the cross-plaintiffs visited the stable of plaintiff and saw the horses there, examining them; that on December 1, 1939, Capt. Currey was boarding and keeping said horses at plaintiff's stable, having no place of his own for feeding and caring for said horses; however, neither of the cross-plaintiffs ever agreed or consented to the boarding, caring for, feeding, or giving attention to said horses by plaintiff."

The appellant deduces therefrom that, since it was further stipulated that he had "had no actual knowledge of the existence of any chattel mortgage until a day or two prior to the filing of this suit", his entire claim as a matter of law became a prior one as against the mortgagees; whereas they, in turn, draw this inference as being conclusive in their favor from the concluding quoted recitation, to the effect that they had never agreed or consented to the boarding or caring for of the animals by the appellant: "The appellees think that that statement, showing the utter lack of any agreement by the mortgagees to the boarding of the horses by appellant, is of controlling importance in this suit, because, among other reasons, in the sole authority relied upon by appellant, namely, the case of American Surety Co. v. Bay City Cattle Co., supra, your Honorable Court, at the bottom of page 250 of 268 S.W., second column, of that opinion, in deciding the priority of the liens against the loan company, said: 'Under the particular facts obtaining * * * on the ground that the loan company impliedly assented to the subjection of the cattle to the statutory lien that arose in favor of the agistor.' And on page 251, first column of 268 S.W., of that opinion, this Honorable Court further said: 'Other facts and circumstances so tending were that Mr. Hybarger, in originally borrowing the money, told its officers that he would buy the cattle in Florida, and ship them to and put them in a pasture in Texas other than his own.'"

It is concluded that the distinguishment, so contended for by the appellees on the facts, between this cause and the Bay City Cattle Company case, is correct—the chattel mortgage in that instance not having been recorded, and the prior pasturage contract having been a tenancy-at-will—and that, in consequence, this one falls rather in line with Masterson v. Pelz, supra, especially, none of the material facts of which are perceived to be in legal effect different from those here obtaining.

For that reason, the sole question here presented having been so foreclosed against the appellant, it is deemed beyond the requirements for a re-discussion of the same question to be indulged in.

The learned trial court properly, it is thought, in effect held that the stable keeper's lien, while superior up to that time for all accrued charges, which it found on the evidence to have been $58.17, dropped to second place or became inferior to the chattel mortgage lien on the animals on and after the date when the chattel mortgage was properly recorded; this, presumably at least, upon the theory that, since the mortgagees had never agreed nor consented to the feeding and caring for of the horses, the feeding-contract therefor having been "on a month-to-month basis", there could be no implied assent upon their part to a future subjection of them to a statutory lien that

thereafter might arise in favor of the livery-stable keeper, should the horses so remain in his care; and that he, in turn, was charged—as a matter of law—with knowledge of the fact that their mortgage on the animals had so become a part of the public records.

At any rate, this is held to be the legal effect of the statutes so cited, R.S. Articles 5502 and 5506, as well as the interpretative holdings of the courts with reference thereto, including the American Surety Co. v. Bay City Cattle Company case, upon which both parties hereto rely, likewise cited supra.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal. The judgment will accordingly be affirmed.

Affirmed.